IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OASIS TOOLING, INC.,                    )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        C.A. No. 22-151 (VAC)
                                        )
SIEMENS INDUSTRY SOFTWARE, INC.,        )
                                        )
                    Defendant.          )


**DEFENDANT SIEMENS INDUSTRY SOFTWARE INC.'S
OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)
<u>FOR PATENT INVALIDITY UNDER 35 U.S.C. § 101</u>**


OF COUNSEL:

Kristin L. Cleveland
Mark W. Wilson
Salumeh R. Loesch
John D. Vandenberg
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204
(503) 595-5300

Kristina R. Cary
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA  02116
(617) 385-7500

Gregg F. LoCascio, P.C.
Michael A. Pearson, Jr.
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

April 1, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com
*Attorneys for Defendant Siemens Industry
Software, Inc.*

# <u>TABLE OF CONTENTS</u>

STATEMENT OF THE NATURE AND STAGE OF PROCEEDING..........................................1

SUMMARY OF ARGUMENT ...............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT ........................................................................................................................4

I. THE PATENTS' CLAIMS ARE INVALID UNDER THE TWO-STEP *ALICE* TEST ....4

 A. *Alice* Step One: The Claims Are Directed To An Abstract Idea ............................5

  1. Governing Law ...............................................................................5

  2. Organizing, Analyzing, And Reporting Data Is An Abstract Idea .............7

  3. The Content And Organization Of The Data Are Not Relevant To Patent Eligibility .................................8

  4. The Claimed Result Is Abstract ....................................................9

  5. The Non-Method Claims Are Directed To The Same Idea ......................10

 B. *Alice* Step Two: The Claims Recite No Non-Abstract Inventive Concept............11

II. THE PATENTS' CLAIMS ARE INVALID UNDER *BERKHEIMER* ..........................15

 A. *Berkheimer*: Parsing And Comparing Data With Conventional Computers Is Patent Ineligible ...............................15

 B. The Claims Of The Asserted Patents Are Analogous To The Invalidated *Berkheimer* Claims And Other Invalidated Claims ..........................17

III. THE COMPLAINT DOES NOT SAVE THESE CLAIMS.............................................19

IV. DISMISSAL IS APPROPRIATE ...............................................................................20

V. CONCLUSION........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) ................................................................. 15

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ................................................................. 13

*Berkheimer v. Hewlett-Packard Co.*,
  224 F. Supp. 3d 635 (N.D. Ill. 2016),
  *aff'd in part, Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................................. 17

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ........................................................... passim

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ................................................................. 11

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) ................................................................. 12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ................................................................... 11

*ClearDoc, Inc. v. Riverside FM, Inc.*,
  2022 WL 606698 (D. Del. Feb. 22, 2022) ................................................. 13

*Content Extraction and Transmission LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................ 8, 16, 19

*Digitech Image Tech., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ............................................................... 6, 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ........................................................... 5, 7, 9

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................................... 6

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ................................................................. 20

*In re BRCA1- and BRCA2-Based Hereditary Cancer Test Pat. Litig.*,
  774 F.3d 755 (Fed. Cir. 2014) ..................................................................... 8

*In re TLI Commc'ns LLC Pat. Litig.,*
  823 F.3d 607 (Fed. Cir. 2016)..................................................................... 8, 16, 19

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
  792 F.3d 1363 (Fed. Cir. 2015)........................................................................ 1, 7

*Intellectual Ventures I LLC v. Symantec Corp.,*
  100 F. Supp. 3d 371 (D. Del. 2015),
  *aff'd in part*, 838 F.3d 1307 (Fed. Cir. 2016) ............................................... 4, 14

*Intellectual Ventures I LLC v. Symantec Corp.,*
  838 F.3d 1307 (Fed. Cir. 2016)............................................................................ 6

*Massachusetts v. Westcott,*
  431 U.S. 322 (1977).............................................................................................. 11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
  566 U.S. 66 (2012)........................................................................................ 5, 6, 12

*Parker v. Flook,*
  437 U.S. 584 (1978)...................................................................................... 5, 6, 12

*SAP America, Inc. v. InvestPic, LLC,*
  898 F.3d 1161 (Fed. Cir. 2018)................................................................... passim

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.,*
  873 F.3d 1364 (Fed. Cir. 2017).................................................................... 11, 12

*SmileDirectClub, LLC v. Candid Care Co.,*
  505 F. Supp. 3d 340 (D. Del. 2020).................................................................... 20

*Standard Havens Prod., Inc. v. Gencor Indus., Inc.,*
  897 F.2d 511 (Fed. Cir. 1990)............................................................................. 11

*Synopsys, Inc. v. Mentor Graphics Corp.,*
  839 F.3d 1138 (Fed. Cir. 2016)...................................................................... 5, 6, 7

*Trading Techs. Int'l, Inc. v. IBG LLC,*
  921 F.3d 1378 (Fed. Cir. 2019)............................................................................. 5

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
  874 F.3d 1329 (Fed. Cir. 2017).................................................................. 6, 11, 12

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.,*
  916 F.3d 1363 (Fed. Cir. 2019).......................................................................... 7, 18

*Voter Verified, Inc. v. Election Sys. & Software LLC,*
  887 F.3d 1376 (Fed. Cir. 2018)............................................................................ 19

**Statutes**

35 U.S.C. § 101 ............................................................................................................ passim

**Rules**

Fed. R. Civ. P. 12 ................................................................................................ 1, 18, 19, 20

Fed. R. Evid. 201 ............................................................................................................... 11

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDING

In its Complaint (D.I. 1), Plaintiff Oasis Tooling, Inc. ("OTI") asserts two related patents: U.S. Pat. Nos. 7,685,545 (the "'545" patent) and 8,266,571 (the "'571" patent) (collectively, "the Asserted Patents"). Because the Asserted Patents do not claim patentable subject matter under 35 U.S.C. § 101 and are therefore invalid as a matter of law, Siemens, accordingly, moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF ARGUMENT

1. All claims of the Asserted Patents are directed to an abstract idea—comparing parsed and standardized data to evaluate their similarities and/or differences. Multiple Federal Circuit and district court cases have found similar claims to be directed to a patent-ineligible idea under *Alice* step one. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). And none of the claims transforms that abstract idea into an "inventive concept" under *Alice* step two. The claims simply recite an "instruction to apply an abstract idea on a computer," which does not supply an "inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). Thus, under the two-step analysis required by the Supreme Court, all claims of the Asserted Patents are ineligible for patent protection and invalid.

2. The claims here are strikingly similar to those found ineligible for patent protection under 35 U.S.C. § 101 in *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018). Specifically, both the claims invalidated in *Berkheimer* and the claims here recite comparing parsed and standardized data to evaluate their similarities and/or differences, using no more than a generic computer.

3. Because all claims of the Asserted Patents are patent-ineligible, OTI has failed to state a claim upon which relief can be granted, and Siemens' Motion to Dismiss should be granted.

## STATEMENT OF FACTS

The asserted '545 and '571 patents (D.I. 1-1) share the same title and essentially the same disclosure. They describe that the alleged invention "relates to parsing data and organizing it into canonical forms, digesting the canonical forms, and comparing digests of design data from different sources, such as chip-level designs and design template libraries." ('571 at 3:17–21.)[1] The patents state that "canonical" means the data is "in a standardized format." (*Id.* at 75:4.) Which standardized format "depends on the design language being parsed." (*Id.* at 6:13–14.)

Collectively, the Asserted Patents include 40 claims, but there is little diversity among the claims beyond the content and organization of the data. Each claim of the Asserted Patents recites multiple steps: parsing data, formatting it into a standardized ("normalized") format, calculating and storing certain representations ("digests") of the data, comparing the digests, and reporting (e.g., creating "summaries" "viewable by a human operator" (*id.* at 6:51–54)) the results of the comparison. Claim 1 of the '571 patent (quoted below) is representative of all the claims.

> 1. A computer-implemented method of <u>evaluating similarities and/or differences</u> between design data for circuits, the design data residing in at least two files stored in computer memory, the method including:
>
> using a computer, identifying cells within design data residing in first and second files, wherein the cells have logical names as parts of the design data and the cells correspond to portions of design for a physical circuit;
>
> <u>parsing syntax of and normalizing</u> the design data within the cells <u>into canonical forms</u>, wherein the canonical forms reduce sensitivity of data analysis to non-functional variations in the design data within a particular cell;
>
> calculating and storing digests of at least selected design data in the canonical forms, producing at least one digest per cell that uniquely digests functional data design within the cell;
>
> <u>comparing the digests</u> of the cells in the first file to the digests of the cells in the second file; and

---

[1] Citations throughout this Brief are only to the '571 patent for convenience unless noted otherwise.

*summarizing at least some results of the comparing of the digests.*

('571 at 81:44–64) (emphases added[2]).)

Each claim includes the same steps and functions as this claim 1, with minor variations, such as three claims ('545 claim 14 and '571 claims 15–16) not expressly reciting identifying data.

The specification discusses each of these steps. The first step identifies cells within design data, which the specification acknowledges humans (*i.e.*, "designers") could do manually. ('571 at 2:46–52.) The claimed "parsing syntax of and normalizing the design data within the cells into canonical forms" step is also addressed in the specification. (*Id.* at 75:33–35, 78:59–61.) Parsers "distinguish the sections of the [data] file and mark them by type." (*Id.* at 18:30–32.) Normalizing data changes the data's format and can be as simple as removing blank spaces. (*Id.* at 51:7–8.) The third and fourth steps of the claimed method recite calculating and comparing "digests," which are mathematical representations of the data to be compared. ('571 claim 1.) "A variety of [mathematical] hash functions can be used to create the digests, such as CRC, MD5 and others," and the comparer that uses these functions "can be structured" in "multiple ways." (*E.g.*, *id.* at 6:16–17, 79:15–16.) Finally, after the digests of standardized data are compared, at least some of the results are summarized, for example in "reports [that] may be summaries to memory 473, such as a database or other intermediate format that another program can process, or to a report 475 that is viewable by a human operator, either on a display or on paper." (*Id.* at 6:51–54.)

Some claims recite other data analysis or organization steps or modules,[3] such as sorting data ('545 claim 13; '571 claim 14), partitioning[4] data ('545 claims 1, 11–12, 14, and 16–17; '571

---

[2] Emphasis is added throughout unless noted otherwise.

[3] "A module is a segment of logic that carries out a particular task." ('571 at 79:8–9.) "In this application, logic is what tells computer components how to execute a task." (*Id.* at 78:56–57.)

[4] "By partition or partitioned, we mean physically or logically divided into groups." ('571 at 75:20–23.)

claims 2, 12–13, 16, and 18–19), interpreting data ('545 claim 15; '571 claims 16–17), organizing data ('545 claims 1, 9–10, and 16–17; '571 claims 1 and 16–18), recognizing data ('545 claims 2 and 13; '571 claims 5–6 and 14), scanning data ('545 claim 3; '571 claims 3 and 11), distinguishing data ('545 claims 4–8 and 18–20; '571 claims 4, 7–10, 15, and 20), and creating data syntax trees ('545 claims 11 and 14; '571 claims 12 and 16). Some claims report different data, such as certain differences between the compared data ('545 claim 2), which data were renamed ('545 claim 3), which data match out-of-date designs ('545 claim 5), and others. Critically, no claim uses the report to improve a circuit or anything else. Each claim begins and ends with abstract information.

No claim improves a computer or requires a specialized computer. For example, the Asserted Patents describe comparing the data by calculating and comparing mathematical representations ("digests") of each data object. Computers were doing that by no later than 1999, as noted in *Intellectual Ventures I LLC v. Symantec Corp.*, 100 F. Supp. 3d 371, 386, 387–88 (D. Del. 2015), *aff'd in part*, 838 F.3d 1307 (Fed. Cir. 2016). The earliest application leading to the Asserted Patents was filed nine years later, in 2008. ('571 at Cover.)

## ARGUMENT

## I.     THE PATENTS' CLAIMS ARE INVALID UNDER THE TWO-STEP *ALICE* TEST

For more than a century, the Supreme Court has made clear that one cannot patent an abstract idea. While presumed valid by statute, the Asserted Patents issued before the Supreme Court issued its landmark decision in *Alice* and were not examined under its framework or progeny. When properly considered under *Alice*, the '545 and '571 patent claims are invalid under 35 U.S.C. § 101. In OTI's own words, the Asserted Patents concern "analysis" of "data" and "identify[ing] similarities and differences among parts of design data files." (D.I. 1 ¶ 15.) Comparing data to identify their similarities and differences is precisely the type of abstract idea that courts have repeatedly found ineligible for patent protection.

Moreover, nothing in the claims transforms them into a patent-eligible application of the abstract idea. The claims do not recite a specialized computer—the claimed invention can be performed on *any* computer. Federal Circuit and district court cases consistently hold that implementing an abstract idea on an unimproved, general computer is not patentable.

A.    *Alice* **Step One: The Claims Are Directed To An Abstract Idea**

1.    **Governing Law**

*Alice*'s first step is to determine whether a patent claim is "directed to" patent-ineligible subject matter such as an abstract idea. *Alice*, 573 U.S. at 217. "Under this inquiry, we evaluate 'the focus of the claimed advance over the prior art' to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (citation omitted).

Information is a patent-ineligible abstract idea. *Id.* As are mental processes. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012); *Parker v. Flook*, 437 U.S. 584, 586 (1978) (holding unpatentable claims directed to "computations [that] can be made by pencil and paper," even though "primarily useful for computerized calculations"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1139, 1152 (Fed. Cir. 2016) (holding claims in the EDA field directed to "translating a functional description of a logic circuit into a hardware component description of the logic circuit" were "directed to an abstract mental process and contain[ed] no inventive concept [and were] therefore invalid"). And because the human mind analyzes information, such analysis is patent-ineligible when not tied to a specific structure or machine. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) ("In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea

category."); *Digitech Image Tech., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (holding the patent "claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine"). Mere functions and results unlimited by particular structures or acts for how to perform or achieve them are also abstract. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (holding patent-ineligible a claim that "requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way").

Notably, abstract ideas are ineligible for patenting even if they are "novel and useful," *Flook*, 437 U.S. at 588, 591, and "narrow and specific," *Mayo*, 566 U.S. at 88; *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) ("We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility.") (citation omitted.); *Synopsys*, 839 F.3d at 1151 ("[A] claim for a new abstract idea is still an abstract idea.").

A patent claim may <u>recite</u> an abstract idea and still be valid if it is not "directed to" that idea. For example, a claim directed to a patent-eligible improvement in how computers operate is not directed to an abstract idea. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). But a claim is directed to an abstract idea if (as here) the claim merely uses a computer as a tool to perform the abstract idea. *See id.* at 1336; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1321 (Fed. Cir. 2016) (distinguishing the claim at issue from those found eligible in *Enfish* because it did "not improve or change the way a computer functions").

### 2.      <u>Organizing, Analyzing, And Reporting Data Is An Abstract Idea</u>

The claims of the Asserted Patents are directed to the abstract idea of comparing parsed and standardized data to evaluate their similarities and/or differences. *See supra* at 2–4. This is also the focus of what the patents describe as their "common theme." ('571 at 69:14–35.)

Each step or function of each claim of the Asserted Patents either organizes the data to be compared (e.g., by parsing it and putting it into a standardized format), compares it (e.g., by calculating and comparing digests), or reports the results of such a comparison. The claims do not recite any particular, non-abstract way that a computer performs these steps and functions. Humans identify, parse, format, partition, compare, summarize, and report information, and the Federal Circuit has consistently held that such routine data organization and comparison steps are abstract:

| <u>Case</u> | <u>"Abstract Idea"</u> |
|---|---|
| *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367–69 (Fed. Cir. 2019) | "collecting, analyzing, manipulating, and displaying data" |
| *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) | "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis" |
| *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366, 1370 (Fed. Cir. 2018) | "parsing and comparing data" "parsing, comparing, and storing data" |
| *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) | "collecting, displaying, and manipulating data of particular documents" |
| *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1139, 1150, 1152 (Fed. Cir. 2016) | "translating a functional description of a logic circuit into a hardware component description of the logic circuit" |
| *Elec. Power Grp., LLC, v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) | "collecting information, analyzing it, and displaying certain results of the collection and analysis" |

| Case | "Abstract Idea" |
|------|-----------------|
| *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 609, 611, 613–15 (Fed. Cir. 2016) | "classifying and storing digital images in an organized manner" |
| *Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) | "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" |
| *In re BRCA1- and BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 774 F.3d 755, 763 (Fed. Cir. 2014) | "comparing BRCA sequences and determining the existence of alterations" |
| *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) | "a process of organizing information through mathematical correlations and is not tied to a specific structure or machine" |

### 3. The Content And Organization Of The Data Are Not Relevant To Patent Eligibility

The Asserted Patents' claims describe the organization and content of the data being organized and compared. For example, each claim refers to portions of circuit-design data called "cells." This design data may be organized (partitioned) into layers ('545 claims 9, 12, 16, 20; '571 claims 3, 10, 13, 18), or into a header and/or body ('545 claims 11, 14; '571 claims 12, 15–16), or by whether the order of the data matters ('545 claims 13, 15; '571 claims 14, 17). This design data also may be organized by significance of the data, with some design data, such as a comment, being designated "non-significant" because it does not affect a circuit that could be generated. ('545 claims 1–3, 9, 11, 17–18, 20; '571 claims 2–3, 5, 10, 12, 19–20.) Similarly, which data portions are compared varies depending on what the person is trying to understand, including comparing design data portions to old, out-of-date, or "bad" data ('545 claims 2, 5, 6, 18; '571 claims 5–7, 20), or data with different names ('545 claim 3; '571 claim 3), or data in another language ('545 claim 4; '571 claim 4), or approved data ('545 claims 7–9, 20; '571 claims 8–10), or data for royalty-bearing designs ('545 claims 10, 19; '571 claim 11).

Under *Electric Power Group*, the above-listed details in the claims regarding the organization and content of the data are immaterial to patent ineligibility. 830 F.3d at 1353 (noting that limiting information to particular content "does not change its character as information"). Comparing parsed and standardized data is abstract no matter what that data describes or why it is being compared. The *Electric Power Group* court faced a 394-word patent claim reciting multiple types of data having a particular organization and information content, including "sub-second, time stamped synchronized phasor measurements . . . collected in real time at geographically distinct points over the wide area of the interconnected electric power grid." *Id.* at 1351. The court did not conflate those data-content details with the focus of the claim, however, when it held that "the focus of" the claim "is on collecting information, analyzing it, and displaying certain results of the collection and analysis," which is an abstract idea. *Id.* at 1351–53. The court's grounds for invalidating those claims are equally applicable here: OTI's claims "do not go beyond requiring the collection, analysis, and display of available information in a particular field, stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Id.* at 1351.

### 4.  **The Claimed Result Is Abstract**

A tell-tale sign that a process merely organizes or analyzes data is that it produces abstract information and not a changed physical device or process. Here, all of the claims end with reporting information. Per the patents' shared specification, these claimed reports, if output, may be on paper: "These reports may be summaries to memory 473, such as a database or other intermediate format that another program can process, or to a report 475 that is viewable by a human operator, either on a display or on paper." ('571 at 6:51–54.) Critically, no claim recites using the report to improve any device or machine. Indeed, no claim requires the report be used at all.

That the claims end with reporting information is no surprise. The patents state repeatedly that a goal of their alleged advance is to provide useful information to a person:

> Comparison of canonical digests is a powerful tool that <u>allows a user to understand</u> small differences between design elements in large files.

('571 at 6:26–28.)

> These reports may be summaries to memory 473, such as a database or other intermediate format that another program can process, <u>or to a report 475 that is viewable by a human operator, either on a display or on paper</u>. There are a wide variety of use cases for comparing files to produce useful reports.

(*Id.* at 6:51–56.)

> Calculating digests of old and new versions of the library can be used to identify changed cells. Partitioning of cells between functional and nonfunctional data and into layers can produce digests from which <u>a library manager can estimate the significance of changes</u> to a new version of the library and investigate in further detail.

(*Id.* at 69:44–49.)

> Using cell digests to audit designs used at foundries and calculate royalties owed has <u>the advantage that digests can be analyzed by auditors without direct access to the digested design data</u>.

(*Id.* at 71:26–29.)

The Asserted Patents give 32 examples of these reports or report excerpts. (*See* '571 cols. 9–11, 21–22, 25–26, 29, 33, 37, 42–44, 46, 48, 56–68.) For purposes of this Motion, it can be assumed that these reports would help designers understand circuit-design data. But however useful, information is not patent eligible, and neither are the data organization and analysis processes generating it.

## 5.   The Non-Method Claims Are Directed To The Same Idea

While some of the patents' claims are not "method" claims, they substantively parallel the method claims. They recite the following "program code" ('571 claim 16) or "logic" or "module" "running on a processor" ('545 claim 14) to perform the steps of the method claims: parser,

normalizer logic, partitioning module, canonical forming module, digester or digester module, comparer module, and reporter module. (*See* '545 claims 14–20 and '571 claims 16–20.) (*See also* '571 at 81:44–47 ("these articles of manufacture include a computer readable storage medium that stores program code for carrying out any of the method embodiments described above.").) In the Patent Office, the patent applicants relied upon the "parallelism between [pending] method and device claims." (Ex. A at 2.)[5] The Complaint also illustrates this parallelism by stating in only conclusory fashion that the asserted non-method claims are infringed. (D.I. 1 ¶¶ 49, 63–64, 85.) This parallelism indicates that the OTI claims should rise or fall together. *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017) (affirming Section 101 invalidity; where method and system claims "contain only minor differences in terminology but require performance of the same basic process, . . . they should rise or fall together").

### B. *Alice* Step Two: The Claims Recite No Non-Abstract Inventive Concept

To be patent eligible, a claim directed to an abstract idea must also recite a "saving inventive concept" in application of the idea, *Two-Way Media*, 874 F.3d at 1338, that adds "significantly more" to the abstract idea, *Alice*, 573 U.S. at 217–18, 221–22. This requires an "innovation in the non-abstract application realm." *SAP Am.*, 898 F.3d at 1163; *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014) (requiring "a 'new and useful application' of the ineligible matter in the physical realm"). The abstract idea itself "cannot supply the inventive concept that renders the invention 'significantly more' than" that idea. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (citation omitted); *see also Chamberlain*

---

[5] Siemens requests the Court to take judicial notice of this statement in the patents' prosecution history pursuant to Fed. R. Evid. 201; *see Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 514 (Fed. Cir. 1990) (taking judicial notice of patent prosecution history, *citing Massachusetts v. Westcott*, 431 U.S. 322, 323 n.2 (1977) (public records "may be judicially noticed")).

*Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019) ("Wireless communication cannot be an inventive concept here, because it is the abstract idea that the claims are directed to."). For example, in *Alice* itself, the "ordered combination" of "additional elements" that the *Alice* Court analyzed in step two were the claims' "computer components," not the abstract idea identified in step one. *Alice*, 573 U.S. at 225.

Additional elements that limit the claim "to a particular technological environment" are insufficient. *Alice*, 573 U.S. at 223. As are conventional post-solution activities such as reporting results. *Flook*, 437 U.S. at 590. As are mere data-gathering steps, *Mayo*, 566 U.S. at 79, and generic elements or combinations of elements. *Alice*, 573 U.S. at 225 (holding claim steps requiring "use of a computer to obtain data, adjust account balances, and issue automated instructions" do "no more than require a generic computer to perform generic computer functions").

Likewise, routine, well-known, and conventional elements cannot save a claim under step two. *Alice*, 573 U.S. at 225. To be a "saving inventive concept" in application, *Two-Way Media*, 874 F.3d at 1338, the claim's application of the abstract idea instead must be novel. *See Alice*, 573 U.S. at 222 ("Because the algorithm was an abstract idea, the claim had to supply a 'new and useful' application of the idea in order to be patent eligible.") (citation omitted)).

Here, no claim of the Asserted Patents includes "significantly more" than the abstract idea of comparing parsed and standardized data to evaluate their similarities and/or differences, and thus no claim contains a "saving inventive concept." The Asserted Patents require no special computer hardware, relying instead on generic computer elements to perform the claimed abstract steps, as the patents' specification makes clear. *E.g.*, *Smart Sys.*, 873 F.3d at 1374–75 (processor, hash identifier, identifying token, writeable memory, are generic computer implementations):

> The technology disclosed may usefully be applied in a variety of methods and devices. The technology also may be embodied in articles of manufacture such as

computer readable storage media storing a computer program that carries out the methods or that <u>can be combined with hardware to produce the devices described</u>.

('571 at 74:43–48; *see also id.* at 5:64–65 ("the term 'file' is used generically").)

Generic computers long have been able to organize, compare, and report data and, as multiple cases have found, their use is not enough to rescue claims directed to an abstract idea. *SAP Am.*, 898 F.3d at 1168 (the patent's "specification makes clear that off-the-shelf computer technology is usable to carry out the analysis"); *ClearDoc, Inc. v. Riverside FM, Inc.*, No. 2:21-cv-01422, 2022 WL 606698, at *6, D.I. 77 at 13 (D. Del. Feb. 22, 2022) (Patent claims are ineligible "when they are directed to 'an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way.'") (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016)).

Further, there is no dispute that generic computers were used in circuit design before the Asserted Patents. Circuit designers have long used software on generic computers to evaluate simple and complex circuit designs before releasing their manufacturing specifications to the foundry. (*See* '571 at 1:45–2:52.) Likewise, circuit designers have long managed the accuracy of design data manually and with the assistance of computer-aided design tools. (*Id.*)

The patents' specification makes clear the patents' purported advance is the claims' abstract idea—comparing parsed and standardized data to evaluate their similarities and/or differences. In a paragraph entitled "Common Theme," the specification summarizes this purported advance and identifies no alleged improvement to computers:

Common Theme

The useful applications described rely on a computer implemented method to <u>evaluate similarities and/or differences</u> between design data for circuits residing in two or more files. A computer is used to identify cells or design units within the design data, as cells and design units are described above. Cells may be grouped in

13

blocks, as explained. Some files may consist of a single header or cell. Within a cell, the syntax of the design data is parsed and normalized into canonical forms. The canonical forms reduce sensitivity of data analysis to non-functional variations in the design data. Digests are calculated and stored for at least part of the design data in the canonical forms. At least one digest is produced per cell or design unit, and typically more than one digest. Digests also may be produced for file headers which are not considered part of any particular cell. Digests of cells in one file are compared to digests of cells in the other file. Depending on whether similarities or differences are more appropriate for any particular analysis, an appropriate summary is generated. The summary may be a report that is human readable or may be stored in a computer file for further processing by other programs.

(*Id.* at 69:14–35.)

Indeed, the specification repeatedly emphasizes this idea, not some improved computer capability, as its supposed advance. (*See, e.g.*, '571 Abstract, 1:24–44, 3:12–32, 6:24–35.)

This "common theme" and the claims describe using certain data representations, called "digests," to compare the data. But the patents demonstrate that these digests do not improve how a computer operates. The specification explains: "A variety of [mathematical] hash functions can be used to create the digests, such as CRC, MD5 and others." ('571 at 6:16–17.) And it cites existing standards for doing these calculations. (*Id.* at 19:31–46.) Indeed, another patent invalidated under *Alice* (Ex. B)[6] (originating in 1999) described and claimed computers calculating and comparing such mathematical representations of data to determine if those data are the same. *See Intellectual Ventures (Symantec)*, 100 F. Supp. 3d at 387–88 (invalidating patent of Ex. B; it was "well known" in 1999 to compare MD5 hashes of two data objects to determine if those data are the same). *Cf. SAP Am.*, 898 F.3d at 1168 (invalidating claims whose "focus . . . is not a

---

[6] *See* U.S. Pat. No. 6,460,050 (issuing from an application filed in 1999) (Ex. B). Exhibits are attached to the Declaration of Marla Beier filed concurrently herewith.

physical-realm improvement but an improvement in wholly abstract ideas—the selection and mathematical analysis of information, followed by reporting or display of the results").[7]

Because the claims of the Asserted Patents are directed to an abstract idea and because they include no "saving inventive concept" in application of that idea they are ineligible for patent protection under *Alice*.

## II.    THE PATENTS' CLAIMS ARE INVALID UNDER *BERKHEIMER*

In deciding patent eligibility, the Federal Circuit often compares the challenged patent claims to claims in prior precedents addressing patent eligibility and has instructed courts "to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294–95 (Fed. Cir. 2016). Certain claims deemed ineligible for patent protection in *Berkheimer* are analogous to the claims at issue here, further supporting that the Asserted Patents are invalid.

### A.    *Berkheimer*: Parsing And Comparing Data
   With Conventional Computers Is Patent Ineligible

The patent at issue in *Berkheimer*, filed in 2001,[8] concerned archiving in computer storage tens to hundreds of thousands of documents. 881 F.3d at 1369. That patent summarized its alleged invention in part as:

> Document or graphic file formats are converted to a <u>standardized</u> representation for subsequent processing. The standardized representations are then <u>parsed</u> into object oriented document components. The components are tagged for subsequent identification and linking purposes. The parsed graphical objects and associated relationships are analyzed and <u>compared</u> to objects and relationships derived from

---

[7] Similarly, "any outside parser tool that is compatible with the canonical digest generating process can be used." ('571 at 52:26–27.)

[8] Berkheimer U.S. Pat. No. 7,447,713 (Ex. C) at 11:45–48.

other documents[.] Additionally, objects and relationships are analyzed and <u>compared</u> to previously imported documents which are part of the archive.

(Ex. C at 2:54–65.) The *Berkheimer* patent claimed certain methods, including methods that parsed the data of each document into document portions, compared those data portions to data portions that had already been archived to evaluate their similarities and/or differences, and then presented the results of the comparison to a person. The method of invalidated *Berkheimer* claim 3 also formatted the data into a standardized format before comparing it.

The Federal Circuit affirmed summary judgment of invalidity under Section 101 of four claims with such methods. *Berkheimer*, 881 F.3d at 1366–67. Specifically, the court found that each of claims 1, 2, 3, and 9 were "similar to claims we held directed to an abstract idea in prior cases" and "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components." *Id.* at 1366–67, 1369–70 (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (finding claims directed to "classifying and storing digital images in an organized manner" were abstract); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" were abstract)). The invalidated claims, with the court's claim constructions bracketed, *Berkheimer*, 881 F.3d at 1366, are:

1. A method of archiving an item in a computer processing system comprising:

presenting the item to a parser;

parsing [i.e., using a program that dissects and converts source code into object code] the item into a plurality of multi-part object structures wherein portions of the structures have searchable information tags associated therewith;

evaluating the object structures in accordance with object structures previously stored in an archive [i.e., analyzing the plurality of multi-part object structures obtained by parsing and comparing it with object structures previously stored in the archive to determine if there is variance between the object and at least one of a predetermined standard and a user defined rule];

16

presenting an evaluated object structure for manual reconciliation at least where there is a predetermined variance between the object and at least one of a predetermined standard and a user defined code.

2. The method as in claim 1 wherein the respective structure can be manually edited after being presented for reconciliation.

3. The method as in claim 1 which includes, before the parsing step, converting an input item to a standardized format for input to the parser.

9. The method as in claim 1 which includes forming object oriented data structures from the parsed items wherein the data structures include at least some of item properties, item property values, element properties and element property values.

(Ex. C at 47:10–27, 47:51–55, Certif. of Correction.)

Significantly, the unpatentable *Berkheimer* claims—like the claims of the Asserted Patents—do not require the presented information to be used to improve any physical process or machine. Rather, the result of these claims is <u>presenting information to a person</u>.[9] *See Berkheimer v. Hewlett-Packard Co.*, 224 F. Supp. 3d 635, 646 (N.D. Ill. 2016), *aff'd in part*, *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018). The Federal Circuit held that "the limitations amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components." *Berkheimer v. HP Inc.*, 881 F.3d at 1370. Without a saving inventive concept in application of this abstract idea, the invalidated claims could not survive.

### B.  The Claims Of The Asserted Patents Are Analogous To The <u>Invalidated *Berkheimer* Claims And Other Invalidated Claims</u>

The claims of the Asserted Patents are strikingly similar to those invalidated in *Berkheimer*. Like the above-quoted claim 3 in *Berkheimer*, each claim of the Asserted Patents recites comparing parsed and standardized data to evaluate their similarities and/or differences and presenting summarized results of that comparison. Also, both sets of claims are computer-implemented,

---

[9] In contrast, the only *Berkheimer* claims that survived summary judgment in that opinion added physical-realm utility, such as "storing a reconciled object structure in the archive without substantial redundancy." 881 F.3d at 1370.

reciting generic computer elements such as a "computer processing system" (*Berkheimer*) and a processor, computer memory, and file (claims of Asserted Patents). Here, the claims describe one of their data organization steps similar to a step in the invalidated *Berkheimer* claims using different terminology. Specifically, they recite "normalizing" the data into "canonical form." (*E.g.*, '571 claim 1.) "By canonical, we mean in a standardized format." ('571 at 75:4; *see also id.* at 78:47–49.) This is similar to invalidated *Berkheimer* claim 3: "converting an input item to a standardized format." *See supra* at 16.

Some of the claim language here describes the informational content of the data (e.g., "design data for circuits"), but this does not change its nature as data, any more than did such language in claim 9 invalidated in *Berkheimer*: "the data structures include at least some of item properties, item property values, element properties and element property values." *See supra* at 16.

The final step of each claim here is to report results of the analysis. "These reports may be summaries to memory 473, such as a database or other intermediate format that another program can process, <u>or to a report 475 that is viewable by a human operator, either on a display or on paper</u>." ('571 at 6:51–54.) The same, again, was true in *Berkheimer*. *See supra* at 16–17.

While *Berkheimer* was decided at the summary judgment stage, the Federal Circuit has applied the same principles to invalidate other similar claims on the pleadings. For example, in *University of Florida Research Foundation*, the claimed system converted data from certain bedside machines to display medical information in "a format independent of any particular bedside machine"—*i.e.*, it standardized the data—such that "[t]he standardized data c[ould] be conveyed to the bedside device for display." 916 F.3d at 1366 (internal citations omitted). The Federal Circuit affirmed dismissal under Rule 12(b)(6) because such claims were directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data." *Id.* at 1368. *See also*

*SAP Am.*, 898 F.3d at 1170 (affirming R. 12(c) judgment); *TLI*, 823 F.3d at 615 (affirming R. 12(b)(6) dismissal); *Content Extraction*, 776 F.3d at 1349, 1351 (same).

## III.   THE COMPLAINT DOES NOT SAVE THESE CLAIMS

This Motion will come as no surprise to OTI. Its Complaint includes several allegations in anticipation of an invalidity challenge under Section 101. But those allegations do not save any of these claims. On the contrary, allegations in the Complaint support this Motion.

First, the Complaint reinforces that the patents' alleged advance is the abstract idea of comparing parsed and standardized data to evaluate their similarities and/or differences:

> [the patents] are generally directed to specific techniques for the granular <u>analysis of</u> design and manufacturing <u>data</u> used to prepare chip designs for manufacturing and to <u>identify similarities and differences</u> among parts of design data files . . . .

(D.I. 1 ¶ 15.)

> [the patents describe] the ability to <u>parse data into syntax trees</u> and <u>normalize the trees into canonical forms</u>, which are used to <u>generate a specific digest</u> per a selected partition . . . .

(*Id.* ¶ 16.)

Analyzing data, identifying similarities and differences among data, parsing data, formatting data into a standardized ("canonical") form, and calculating a digest from data are quintessential human cognitive actions and thus, the claims are invalid as a matter of law. *See supra* at 7–8; *see also Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385–86 (Fed. Cir. 2018) (affirming dismissal of complaint asserting infringement of claims directed to "human cognitive actions").

Second, the Complaint's attempts to save the claims assume an incorrect view of the law. For example, the Complaint asserts that the data analyses in the patents were new and useful:

> None of the aforesaid steps was known, let alone conventional, in the art at the time of the inventions because then-conventional chip-level design and manufacturing

data management systems could not determine or summarize what changed within a given collection of cell and block data found within a file.

(D.I. 1 ¶ 20.) But even new and useful abstract ideas are patent ineligible. *See supra* at 6.

## IV.   <u>DISMISSAL IS APPROPRIATE</u>

Implementing an abstract idea on a "generic computer to perform generic computer functions" is patent ineligible as a matter of law. *Alice*, 573 U.S. at 225. The application of that principle to the claims here requires no fact finding. The Complaint contains no well-pled facts refuting invalidity under Section 101. Nor is construction of the claims' scope needed because even a narrow data analysis is abstract. *See supra* at 6. These patent infringement causes of action should thus be dismissed with prejudice under Rule 12. *See, e.g.*, *SAP Am.*, 898 F.3d at 1166 (claims "frequently" found ineligible on the pleadings); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) (affirming dismissal of complaint: "We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."); *SmileDirectClub, LLC v. Candid Care Co.*, 505 F. Supp. 3d 340, 348 (D. Del. 2020) (explaining why neither claim construction nor fact discovery were needed before granting motion to dismiss for invalidity under Section 101).

## V.   <u>CONCLUSION</u>

Because the Asserted Patents claim ineligible subject matter, Siemens respectfully requests that the Complaint be dismissed for failure to state a claim upon which relief can be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____

OF COUNSEL:

Kristin L. Cleveland
Mark W. Wilson
Salumeh R. Loesch
John D. Vandenberg
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204
(503) 595-5300

Kristina R. Cary
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA  02116
(617) 385-7500

Gregg F. LoCascio, P.C.
Michael A. Pearson, Jr.
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

April 1, 2022

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com
*Attorneys for Defendant Siemens Industry*
*Software, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 1, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan Choa, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, DE  19899<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Andre, Esquire<br>Lisa Kobialka, Esquire<br>James Hannah, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>990 Marsh Road<br>Menlo Park, CA  94025<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Aaron Frankel, Esquire<br>Cristina Martinez, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY  10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Karen Jacobs*

Karen Jacobs (#2881)