IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OASIS TOOLING, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-151 (VAC) |
| | ) | |
| SIEMENS INDUSTRY SOFTWARE INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SIEMENS INDUSTRY SOFTWARE INC.'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
THE COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)
FOR PATENT INVALIDITY UNDER 35 U.S.C. § 101**

OF COUNSEL:

Kristin L. Cleveland
Mark W. Wilson
Salumeh R. Loesch
John D. Vandenberg
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204
(503) 595-5300

Kristina R. Cary
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA  02116
(617) 385-7500

Gregg F. LoCascio, P.C.
Michael A. Pearson, Jr.
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

April 26, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant
Siemens Industry Software, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ............................................................................................. 1

II.  OTI HAS NO ANSWER TO THE CONTROLLING *BERKHEIMER* DECISION
WHICH WARRANTS A FINDING OF INELIGIBILITY HERE .................................. 1

III. THE OPPOSITION'S "STATEMENT OF FACTS"  IS NOT TIED TO THE CLAIMS
AND IS THUS IRRELEVANT .......................................................................... 4

IV. OTI FAILS TO DISTINGUISH SIEMENS' OTHER CITED CASES ............................ 5

V.  OTI'S CITED CASES REGARDING PHYSICAL-REALM IMPROVEMENTS ARE
IRRELEVANT BECAUSE THE ASSERTED PATENTS CLAIM NONE...................... 6

VI. PATENT INELIGIBILITY IS RIPE FOR DECISION ON THIS MOTION .................. 10

VII. CONCLUSION ............................................................................................. 10

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)...................................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)....................................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016)...................................................................................7

*Art+COM Innovationpool GmbH, v. Google Inc.*,
    183 F. Supp. 3d 552 (D. Del. 2016)........................................................................9, 10

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)...................................................................................7

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)............................................................... *passim*

*CellSpin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)...................................................................................7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018)...................................................................................7

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)...................................................................................8

*Elec. Power Grp., LLC, v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)...............................................................................6, 8

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...................................................................................8

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)...............................................................................7, 8

*In re BRCA1- and BRCA2-Based Hereditary Cancer Test Pat. Litig.*,
    774 F.3d 755 (Fed. Cir. 2014)...................................................................................5

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019)...............................................................................8, 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)............................................................................9

*Network Congestion Sols., LLC v. U.S. Cellular Corp.*,
   170 F. Supp. 3d 695 (D. Del. 2016).....................................................................10

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
   827 F.3d 1042 (Fed. Cir. 2016)............................................................................6

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)............................................................................9

*Smartflash LLC v. Apple Inc.*,
   680 F. App'x 977 (Fed. Cir. 2017) ......................................................................10

*Smartflash LLC v. Apple Inc.*,
   2015 WL 661174 (E.D. Tex. Feb. 13, 2015) .......................................................10

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   179 F. Supp. 3d 339 (D. Del. 2016)......................................................................9

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019)............................................................................9

*StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*,
   113 F. Supp. 3d 1241 (M.D. Fla. 2015) ..............................................................10

*Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*,
   916 F.3d 1363 (Fed. Cir. 2019)............................................................................5

**Statutes**

35 U.S.C. § 101.................................................................................... *passim*

35 U.S.C. § 102.............................................................................................3

## I.      <u>INTRODUCTION</u>

All claims of OTI's Asserted Patents are invalid because they are ineligible for patent protection. This is clear both from an application of the Supreme Court's test outlined in *Alice* and from comparing the claims in this case to those invalidated by the Federal Circuit in *Berkheimer*. In its Opposition Brief, OTI makes no attempt to distinguish its claims from those invalidated in *Berkheimer*, alleges factual disputes that are legally irrelevant to Siemens' motion, unsuccessfully attempts to distinguish the precedent Siemens cited, and cites cases that support Siemens' motion. The Opposition also misstates Siemens' articulation of the abstract idea and focuses on the irrelevant *potential* physical-realm utility of the alleged invention not embodied in the claims. None of OTI's arguments refutes Siemens' showing that OTI's claims are invalid under Section 101.

Further, there is no reason this Court should wait to find these claims patent ineligible. OTI identifies no material claim construction dispute or fact dispute at either step of the *Alice* analysis. And OTI identifies no good reason to delay resolution. With no reason to wait, Siemens respectfully requests its motion to dismiss be granted.

## II.     **OTI HAS NO ANSWER TO THE CONTROLLING *BERKHEIMER* <u>DECISION WHICH WARRANTS A FINDING OF INELIGIBILITY HERE</u>**

OTI's claims are strikingly similar to the invalidated *Berkheimer*[1] claims and, as such, should likewise be found patent ineligible. OTI makes no attempt to dispute Siemens' detailed showing in its Opening Brief (D.I. at 17–18) of the similarity between the invalid *Berkheimer* claims and OTI's claims. Furthermore, *Berkheimer* refutes each of OTI's primary arguments, which misapply Section 101 ineligibility law. Specifically, were OTI's Opposition a correct view of the law, then the Federal Circuit would not have invalidated those *Berkheimer* claims.

---

[1] *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018).

On *Alice* step one, OTI argues that "comparing data" overgeneralizes the claims. (D.I. 18 at 9–10.) But Siemens did not characterize the claims as merely "comparing data." Instead, Siemens identified the abstract idea—*seven times*—as "comparing parsed and standardized data to evaluate their similarities and/or differences." (D.I. 14 at 1, 7, 12, 13, 17, 19.) OTI never mentions Siemens's actual articulation of the claims' focus, which is no more generalized than the abstract idea the Federal Circuit articulated in *Berkheimer*: "parsing and comparing data." (D.I. 14 at 16; *see also id.* at 7–8 (table of abstract ideas identified by the Federal Circuit).)

OTI argues that various claims provide additional details of the data analysis and organization steps, not found in claim 1 of the '571 patent, such as parsing data into "syntax tree" "data structure[s]." (D.I. 18 at 7.) But OTI does not argue that any of these additional details, which still concern abstract information, give these claims a different focus than claim 1. Again, *Berkheimer* controls. The invalidated dependent claims there (*Berkheimer* claims 2, 3 and 9) likewise added details about information, including specific details of "data structures" formed from the parsed items, but the Court nevertheless characterized each invalidated claim as performing the same "abstract idea of parsing and comparing data with conventional computer components." (*Id*. at 15–16.)

OTI argues that the claimed invention is rooted in computer technology (D.I. 18 at 13), but the mere use of a computer does not make an invention patent eligible. The invalidated *Berkheimer* claims used a computer to parse and convert documents to a standardized format—something that cannot practically be done in one's head—in the context of archiving in computer storage tens to hundreds of thousands of documents. (*See* D.I. 14 at 15.)

OTI argues that the claimed invention improves the functionality of computers. (D.I. 18 at 13.) But like many a patent owner before it, OTI conflates what the Federal Circuit time and again

2

has distinguished: the difference between a *per se* useful abstract idea being performed on a computer, which is patent ineligible, versus an improvement in how a computer operates as a computer. (*See* D.I. 14 at 6.) Even if the claims' abstract idea were useful (like most abstract ideas in patent-ineligible claims), it still would not even arguably improve the functionality of the computer.[2] Merely giving a chip designer useful information does make the computer better at identifying, parsing, formatting, calculating, storing, comparing, or reporting data. (*See id*. at 13–15.) The invalidated claims in *Berkheimer* again illustrate: their abstract idea provided useful information to a person, but it did not improve the claims' "computer processing system" (*id*. at 16), unlike the surviving *Berkheimer* claims (D.I. 18 at 17–18).

On *Alice* step two, OTI argues that the claims do not "preempt the field." (D.I. 18 at 16–18.) Field preemption, however, is irrelevant. Certainly, the invalidated claims in *Berkheimer* did not preempt the field of archiving documents in computer storage.

OTI argues that the Asserted Patents provide "tangible benefits." (D.I. 18 at 16.) But even if true, that, too, would be irrelevant as even "useful" abstract ideas are patent ineligible. (D.I. 14 at 6.) The inventions of the invalidated claims in *Berkheimer* provided tangible benefits of reporting to a person the similarities and/or differences between data—the same purported benefit as the claims here—and were still found invalid. (*See id*. at 15–19.)

Conflating Section 101 with Section 102 of the Patent Act, OTI argues that the claims' alleged invention was new and unconventional. (D.I. 18 at 19.) Again, OTI has misapplied the law, which provides that abstract ideas, even when novel, are patent ineligible. (*See* D.I. 14 at 6,

---

[2] OTI states that "As Siemens concedes, computers using the inventions of the Asserted Claims are better at performing chip-design analysis functions than conventional computers. Motion at 10." (D.I. 18 at 14.) Siemens did not say that. It said: "it can be assumed that these reports would help designers understand circuit-design data." (D.I. 14 at 10.)

11–12.) Unconventionality or inventiveness only matters under *Alice* if it concerns additional non-abstract elements of a claim (i.e., the physical realm elements)—such as a "computer processing system" (*Berkheimer*) or a processor, computer memory, and file (claims of the Asserted Patents). (*See id*. at 11–12.) Here, as in *Berkheimer*, it is undisputed that the physical elements of OTI's claims are generic and conventional. (*Id*. at 13, 18.)

On both steps of *Alice*, OTI argues that the claims are "specific" (D.I. 18 *passim*.) It treats the word "specific" as a talisman, repeating it scores of times. OTI's argument is irrelevant because even "narrow and specific" abstract ideas are ineligible for patenting. (D.I. 14 at 6.) Even if parsing to form syntax trees were more specific than parsing in general, they are both abstract data organization steps. *Berkheimer*, again, controls. The abstract elements of the invalidated *Berkheimer* claims were no less specific, reciting, for example, "forming object oriented data structures from the parsed items wherein the data structures include at least some of item properties, item property values, element properties and element property values." (*See id*. at 16–17.) Yet, this narrowing in the abstract realm did not save those claims.

In sum, the Federal Circuit invalidating under Section 101 claims that are strikingly similar to OTI's claims refutes the entirety of OTI's arguments on both steps of *Alice*.

## III.    THE OPPOSITION'S "STATEMENT OF FACTS" IS NOT TIED TO THE CLAIMS AND IS THUS IRRELEVANT

For purposes of this motion, Siemens does not contest any non-conclusory allegation of fact in the Complaint repeated in the Opposition's Statement of Facts. (D.I. 18 at 1–8.) They are not tied to the claims and are thus irrelevant under *Alice* jurisprudence (see section II). OTI's Statement of Facts begins with a discussion of alleged challenges presented by the "complexity of chip designs, which can include 40,000 or more unique cells within hundreds of thousands or millions of individual cells," and the supposed benefits of the alleged invention, including "a

seismic shift in the process for developing and manufacturing chips." (D.I. 18 at 1, 5.) These allegations are irrelevant under *Alice* because they are not reflected in the patents' claims. No claim requires more than three cells or that any of those three cells be complex. Nor does any claim require that the information reported be used in manufacturing a chip. Indeed, it is undisputed that "no claim recites using the report to improve any device or machine. Indeed, no claim requires the report be used at all." (D.I. 14 at 9.)

As explained in the Opening Brief, this lack of physical-realm utility is precisely what distinguished the invalidated claims from the surviving claims in *Berkheimer*. (D.I. 14 at 17 n.9.) There, the patent described some physical-realm utility of the alleged invention, making data storage more efficient, but the invalidated claims stopped short of that utility in the physical realm. Here, likewise, all of the claims of the Asserted Patents stop at reporting information that may or may not be used (or even read). They thus are directed to an abstract idea (step one) and lack any saving inventive concept in the physical realm (step two), and are therefore patent ineligible.

## IV.   OTI FAILS TO DISTINGUISH SIEMENS' OTHER CITED CASES

Although OTI makes no attempt to distinguish the invalidated *Berkheimer* claims or the decision invalidating those claims, it does attempt to distinguish a few of the other Federal Circuit decisions that Siemens cites that invalidate claims under Section 101. Its attempts fail.

OTI attempts to distinguish *In re BRCA1*[3] and *University of Florida*[4], arguing "they dealt with claims that broadly covered basic concepts such as parsing data or comparing data, without providing any meaningful limitations on how to do so." (D.I. 18 at 12.) But OTI's claims likewise are not meaningfully limited. Under *Alice* step two, a limitation must be an "innovation in the non-

---

[3] *In re BRCA1- and BRCA2-Based Hereditary Cancer Test Pat. Litig.*, 774 F.3d 755, 763–64 (Fed. Cir. 2014).

[4] *Univ. of Fla. Research Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367–69 (Fed. Cir. 2019).

abstract application realm" to be meaningful. (*See* D.I. 14 at 11–12.) The only non-abstract elements in OTI's claims are a processor, computer memory, and file, and OTI does not deny that all of these are generic and conventional. (*Id*. at 17–18.)

OTI explains that the *Electric Power Group*[5] Court "found that claims were not patent eligible because they only applied generic and abstract concepts of gathering and analyzing information without providing any 'inventive technology for performing those functions.'" (D.I. 18 at 12.) Again, that is precisely the case here. It is undisputed that the claims do not recite new computer technology for identifying, parsing, formatting, calculating, storing, comparing, or reporting data. (*See* D.I. 14 at 12–13.) OTI identifies no new processor, computer memory, or file required by these claims. (*See* D.I. 18 at 7, 16.)

## V.    OTI'S CITED CASES REGARDING PHYSICAL-REALM IMPROVEMENTS ARE IRRELEVANT BECAUSE THE ASSERTED PATENTS CLAIM NONE

OTI cites decisions involving physical-realm improvements to computers, communications systems, laboratory techniques, etc. None of the claims in these decisions is like the claims of the Asserted Patents. On the contrary, the claims in the cited decisions have what OTI's claims lack: a physical realm improvement to a device or technique.

The claims in *Rapid Litigation*[6] were directed to an improved laboratory technique of "(A) subjecting previously frozen and thawed cells to density gradient fractionation to separate viable cells from non-viable ones; (B) recovering the viable cells; and (C) refreezing the viable cells." 827 F.3d at 1045. In contrast, OTI's claims begin and end with abstract information.

---

[5] *Elec. Power Grp., LLC, v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

[6] *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016).

In *Aatrix*[7], the specification indicated that the claimed invention "uses less memory, results in faster processing speed, and reduces the risk of thrashing which makes the computer process forms more efficiently." 882 F.3d at 1127. These are the type of computer improvements that might be patent eligible, like the surviving *Berkheimer* claims that presented a genuine dispute of fact. But neither OTI's Asserted Patents nor its Complaint identify any such computer-performance improvements linked to the claims. (*See, e.g.*, D.I. 14 at 13–14 (quoting patents' "common theme" description).) For example, it is undisputed that conventional computers were capable of calculating "digests." (*Id.* at 14–15.) Instead, here, the alleged improvement is to report useful information that might be read by a person. Better information is not a better computer.

Both *Amdocs*[8], 841 F.3d at 1300–01, and *Bascom*[9], 827 F.3d at 1350, concerned a claimed physical distribution of system components working together in a distributed manner improving the system's core operations. Similarly, in *CellSpin*[10], the claims recited a new "two-step, two-device structure requiring a connection before data is transmitted," which was a "plausibly inventive way of arranging devices and using protocols[.]" 927 F.3d at 1318, 1319. OTI's claims, however, recite no new physical distribution or arrangement of devices.

The claims in *Core Wireless*[11] were "directed to an improvement in the functioning of computers, particularly those with small screens." 880 F.3d at 1363. In *Finjan*,[12] the claimed

---

[7] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126–28 (Fed. Cir. 2018).

[8] *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016).

[9] *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

[10] *CellSpin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

[11] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018).

[12] *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018).

invention improved a computer's security when downloading executable programs. 879 F.3d at 1304–05. OTI's claims, however, do not even arguably improve a core capability of a computer.

*Enfish*,[13] likewise, concerned improving a core computer capability: storing and retrieving data. The Court held that "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory[]" was not an abstract idea. 822 F.3d at 1339. In contrast, OTI's claims recite at most a new use of existing capabilities, not an improved computer capability or arrangement. Therefore here, the manner in which *Electric Power Group* distinguished the claims in *Enfish* applies with equal force:

> In *Enfish*, we applied the distinction to reject the § 101 challenge at stage one because the claims at issue focused not on asserted advances in uses to which existing computer capabilities could be put, but on a specific improvement—a particular database technique—in how computers could carry out one of their basic functions of storage and retrieval of data. The present case is different: the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.

830 F.3d at 1354.

The claimed invention in *DDR Holdings*[14] altered the standard operation of a computer by creating a hybrid web page incorporating "look and feel" elements from the host web site with commerce objects from a third-party web site by departing from the conventional sequence of events after the click of a hyperlink advertisement. 773 F.3d at 1248–49. Similarly, in *Koninklijke KPN*,[15] "the claimed invention [was] directed to a non-abstract improvement [of an error checking device] because it employs a new way of generating check data that enables the detection of persistent systematic errors in data transmissions that prior art systems were previously not

---

[13] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

[14] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

[15] *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019).

equipped to detect." 942 F.3d at 1151. This changed operation improved the device's core capability of reliably checking for errors in the transmission of data over a network. In contrast, performing the method of OTI's claims on a computer does not change the standard way that a computer performs any of its core operations. (D.I. 14 at 7–8.)

In *McRO*[16], the patent claimed "a method for automatically … producing accurate and realistic lip synchronization and facial expressions in animated characters[]" via computer technology, improving on the prior art practice of producing these animations manually. 837 F.3d at 1306–07 (ellipses in original). The Federal Circuit has cited these physical-realm innovations to distinguish the *McRO* claims, which distinctions apply equally, here:

> [T]he claims here are critically different from those we determined to be patent eligible in *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). The claims in *McRO* were directed to the creation of something physical—namely, the display of "lip synchronization and facial expressions" of animated characters on screens for viewing by human eyes. *Id.* at 1313. The claimed improvement was to how the physical display operated (to produce better quality images), unlike (what is present here) a claimed improvement in a mathematical technique with no improved display mechanism. The claims in *McRO* thus were not abstract in the sense that is dispositive here.

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

None of the District Court cases OTI cites supports OTI. In *SRI*[17], a physical "hierarchy of network monitors" "improve[d] the functioning of the computer itself." 179 F. Supp. 3d at 348, 354. In *Art+COM*[18], physical-realm elements including "distributed data sources" allowed "a user to access more electronic pictorial data in a more rapid fashion . . . with increasing resolution over

---

[16] *McRO, Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299 (Fed. Cir. 2016).

[17] *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 179 F. Supp. 3d 339 (D. Del. 2016), *aff'd in relevant part*, 930 F.3d 1295 (Fed. Cir. 2019).

[18] *Art+COM Innovationpool GmbH, v. Google Inc*., 183 F. Supp. 3d 552 (D. Del. 2016).

time." 183 F. Supp. 3d at 560. In *Network Congestion*[19], distributed monitoring of data congestion and control of device data rates improved a network. 170 F. Supp. 3d at 704–05. Finally, OTI cites *Smartflash LLC v. Apple Inc.*, No. 6:13cv447, 2015 WL 661174, at \*8–9 (E.D. Tex. Feb. 13, 2015), for denying summary judgment of invalidity under Section 101, but fails to note that the Federal Circuit held the claims *invalid* under Section 101 in the same case. *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977 (Fed. Cir. 2017) (non-precedential).[20]

## VI.    PATENT INELIGIBILITY IS RIPE FOR DECISION ON THIS MOTION

There is no reason to postpone adjudication of patent ineligibility. OTI alleges no material fact dispute or claim construction needed to determine under *Alice* step one that these claims are directed to an abstract idea. OTI implies supposed fact disputes on *Alice* step two, but, as noted, none is relevant to determination of this motion. On the only facts that are relevant under step two, it is undisputed that the claims encompass using conventional computer processors, memory and files which cannot be the meaningful innovation necessary to save a claim directed to an abstract idea. With no material dispute on either step of the *Alice* test, determination of patent ineligibility now before any further judicial or party resources are expended is proper.

## VII.    CONCLUSION

Because the Asserted Patents claim ineligible subject matter, Siemens respectfully requests that the Complaint be dismissed with prejudice.

---

[19] *Network Congestion Sols., LLC v. U.S. Cellular Corp.*, 170 F. Supp. 3d 695 (D. Del. 2016).

[20] OTI also cites *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, 113 F. Supp. 3d 1241, 1251–52 (M.D. Fla. 2015), but does not suggest that the claims there are comparable to OTI's claims here. In any event, that decision predates most of the Federal Circuit decisions cited by Siemens.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Karen Jacobs*

_____

OF COUNSEL:

Kristin L. Cleveland
Mark W. Wilson
Salumeh R. Loesch
John D. Vandenberg
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, OR  97204
(503) 595-5300

Kristina R. Cary
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA  02116
(617) 385-7500

Gregg F. LoCascio, P.C.
Michael A. Pearson, Jr.
Matthew J. McIntee
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 389-5000

April 26, 2022

Karen Jacobs (#2881)
Cameron P. Clark (#6647)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*
*Siemens Industry Software, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 26, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 26, 2022, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                  *VIA ELECTRONIC MAIL*
Jonathan Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
*Attorneys for Plaintiff*

Paul J. Andre, Esquire                                     *VIA ELECTRONIC MAIL*
Lisa Kobiakla, Esquire
James Hannah, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
*Attorneys for Plaintiff*

Aaron M. Frankel, Esquire                                  *VIA ELECTRONIC MAIL*
Cristina Martinez, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
*Attorneys for Plaintiff*


                                            */s/ Karen Jacobs*
                                            _____
                                            Karen Jacobs (#2881)